# UNITED STATES v. McCLURE.

District Court, E. D. Tennessee, N. D.

Aug. 8, 1936.

J. B. Frazier, Jr., U. S. Atty., and Robert Kennerly, Asst. U. S. Atty., both of Knoxville, Tenn.

Hooper & Crawford, Ben W. Hooper, and William M. Crawford, all of Newport, Tenn., for defendant.

TAYLOR, District Judge.

This is a removal proceeding. The defendant was indicted by a federal grand jury in the state of Virginia, charged with leaving the state of Virginia to escape prosecution for a violation of a state statute. This proceeding is under section 1014 Rev.St., 18 U.S.C.A. § 591.

Among other contentions, the defendant insists, through counsel, that the federal

statute under which he is indicted is invalid.

Assuming, but not deciding, that this question is properly to be considered by this court sitting as a United States commissioner, the question of the validity of the statute has been considered. No case has been seen passing upon the precise question, and the cases bearing the closest analogy are those dealing with pure food and drugs and the White Slave Traffic Act, 36 Stat. 825 (18 U.S.C.A. §§ 397–404). It is urged that the statute here under consideration is invalid because it invades the absolute rights of individuals and because it is an invasion of the rights reserved to the several states in regard to the regulation of immoralities of individuals within the jurisdiction of the several states.

The case of Hoke v. United States, 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523, 43 L.R.A.(N.S.) 906, Ann.Cas.1913E, 905, is the first case before that court in which the validity of the White Slave Traffic Act was brought into consideration. There it was urged that women and men, not being articles of merchandise, were not subject to regulation as commerce. And, as here insisted, it was there urged that men and women have rights which the White Slave Traffic Act wrongfully withdrew; that is, the right to travel between the several states. In discussing those precise questions, the court said:

"Of course it will be said that women are not articles of merchandise, but this does not affect the analogy of the cases; the substance of the congressional power is the same, only the manner of its exercise must be accommodated to the difference in its objects. It is misleading to say that men and women have rights. Their rights cannot fortify or sanction their wrongs; and if they employ interstate transportation as a facility of their wrongs, it may be forbidden to them to the extent of the act of July 25, 1910, and we need go no farther in the present case.

"The principle established by the cases is the simple one, when rid of confusing and distracting considerations, that Congress has power over transportation 'among the several states;' that the power is complete in itself, and that Congress, as an incident to it, may adopt not only means necessary but convenient to its exercise, and the means may have the quality of police regulations. Gloucester Ferry Co. v. Pennsylvania, 114 U.S. 196, 215, 5 S.Ct. 826, 29 L.Ed. 158; Cooley, Const.Lim. (7th Ed.) 856."

In the case of Hipolite Egg Co. v. United States, 220 U.S. 45, 31 S.Ct. 364, 55 L.Ed. 364, in considering the statute dealing with deleterious or misbranded articles of food, the court recognized the right of the Congress under the commerce clause to outlaw certain articles from commerce.

■ The court having recognized the commerce clause as applicable to persons as well as merchantable commodities, I am unable to see wherein a statute denying the right of interstate travel to one charged with a violation of law with the intent on his or her part to escape a prosecution for such violation is invalid as violating or encroaching upon powers reserved to the states. Interstate commerce may be effected by any means of transportation, and, while the legislation may be a long step in the direction of exercising powers that might be effectively exercised by the states under extradition statutes and treaties, that is a question of policy with which the courts must not concern themselves.

■ It was also suggested in argument that the purpose of the Congress in enacting the statute and the practical result of the removal proceeding here involved would be the extradition of the defendant to the state of Virginia, there to be prosecuted for the violation of state statutes which the federal indictment charges he became a fugitive from the state of Virginia to escape trial upon. It has been repeatedly decided that the courts are not to impugn the motives of Congress, but may alone consider the question of the validity of the statute, giving it the construction the language employed requires.

■ The indictment creates prima facie evidence of a violation of the statute, and it is not for the court on removal proceeding to grant a hearing upon the merits, nor to resolve doubtful questions of law or fact, and defendants have no constitutional right to such hearing. United States ex rel. Kassin v. Mulligan, 295 U.S. 396, 55 S.Ct. 781, 79 L.Ed. 1501.

When the defendant is brought to trial in the federal court on the indictment here involved, all of the defenses suggested at the hearing may by him be interposed, and all questions of law relative to the validity of the underlying statute, the sufficien-

cy of the indictment, and kindred questions will be available to him.

I am of opinion under the record before me that it is my duty to order the defendant's removal to the state of Virginia, and an order to that effect may be prepared for approval and entry.

The defendant may be enlarged upon making bond in the penal sum of $5,000, conditioned that he appear before the District Court in the division of the district where indicted, on the first day of the next term of such court, there to abide the judgment and orders of the court, etc.