**UNITED STATES of America**

v.

**Lawrence E. HANN.**

**No. 2:08–00002.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Aug. 22, 2008.

Jude Thaddeus Lenahan, Federal Public Defender's Office, Nashville, TN, for Lawrence E. Hann.

S. Carran Daughtrey, Office of the United States Attorney, Nashville, TN, for United States of America.

## MEMORANDUM

ALETA A. TRAUGER, District Judge.

This matter comes before the court on a Motion to Dismiss the Indictment filed by the defendant (Docket No. 21), to which the United States has responded (Docket No. 24), and the defendant has replied. (Docket No. 31). For the reasons discussed herein, the defendant's motion will be denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The defendant, Lawrence E. Hann, was convicted of Third Degree rape in Cayuga County, New York, on March 6, 1997. Mr. Hann was sentenced to 90 days of incarceration followed by five years of probation. On June 5, 1998, following his release from incarceration, Mr. Hann registered with the New York Sex Offender Registry as required under New York law. When he was convicted, in 1997, New York law required Mr. Hann to remain on the registry for ten years from the date of his conviction. On October 18, 2000, Mr. Hann was convicted in Auburn, New York, for violating the New York sex offender registration law. On January 18, 2006, New York law was changed to require sex offenders to remain on the registry for twenty years.

On January 30, 2008, Mr. Hann provided a false address on his Sex Offender Registry Change of Address form. In April or May 2008, Mr. Hann moved from New York to Tennessee, where he was also required to register as a sex offender. Specifically, Tennessee requires sex offenders to register with the Tennessee Bureau of Investigation within 48 hours of "establishing or changing a primary or secondary residence [or] establishing a physical presence at a particular location." Tenn.Code. Ann. § 40–39–203.

On May 16, 2008, a Criminal Complaint was filed against Mr. Hann charging that he traveled in interstate commerce and knowingly failed to register or update his sex offender registration, in violation of the Sex Offender Registration and Notification Act ("SORNA"), which imposes a duty on states to register sex offenders in each jurisdiction in which a qualifying sex offender resides, works, or attends school, and imposes a duty on sex offenders themselves to so register. 42 U.S.C. § 16913. Mr. Hann was charged under 18 U.S.C. § 2250(a)(2)(B), which creates a federal crime against individuals who are required to register under SORNA, who travel in interstate commerce, and who fail to register or update a registration as required by that Act. On May 21, 2008, a federal grand jury returned a single count indictment charging that, between April 19, 2008 and May 21, 2008, Mr. Hann failed to register as a sex offender in violation of 18 U.S.C. § 2250(a). On May 28, 2008, the defendant was arraigned on the indictment, entering a plea of not guilty. On June 26, 2008, the defendant filed a motion to dismiss the indictment on the grounds that

Congress lacked the power to pass the law, and that it violated the due process clause, the ex post facto clause and the nondelegation doctrine.

## ANALYSIS

### I. Standard of Review

■ Motions to dismiss indictments are governed by Rule 12 of the Federal Rules of Criminal Procedure, which states "Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." Fed.R.Crim.P. 12(b). The Sixth Circuit guides district courts to "dispose of all motions before trial if they are capable of determination without trial of the general issue." *U.S. v. Jones*, 542 F.2d 661, 665 (6th Cir.1976). Moreover, "Rule 12 vests the Court with authority 'to determine issues of fact in such manner as the court deems appropriate.'" *Id.* (quoting Notes of the Advisory Committee to Fed.R.Crim.P. 12, reprinted in 8 Moore P 12.01(3) at 12–8). The Federal Rules of Criminal Procedure "clearly envision that a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Jones*, 542 F.2d at 664; *see also U.S. v. Craft*, 105 F.3d 1123, 1126 (6th Cir.1997) ("District Courts may ordinarily make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate factfinder."). A defense raised in a motion to dismiss indictment is "capable of determination if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *Jones*, 542 F.2d at 664 (citing *United States v. Cov-*ington, 395 U.S. 57, 60, 89 S.Ct. 1559, 1561, 23 L.Ed.2d 94 (1969)).

■ An indictment that is valid on its face may not be dismissed on the ground it is based on inadequate or insufficient evidence. *United States v. Williams*, 504 U.S. 36, 54, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). Therefore, a court cannot consider a factual challenge to an indictment purporting to show a defect consisting solely of insufficient evidence to prove a particular charge. *Id.* Rule 12(b)(1) of the Federal Rules of Criminal Procedure, which cautions the trial judge that she may consider on a motion to dismiss the indictment only those objections that are "capable of determination without the trial of the general issue," indicates that evidentiary questions of this type should not be determined on such a motion. *United States v. Knox*, 396 U.S. 77, 83 n. 7, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969). In short, "a motion to dismiss should be denied if it requires a pretrial test of the government's evidence." *U.S. v. Jones*, No. 1:05–132, 2006 WL 399234, at *1 (E.D.Tenn. Feb. 16, 2006).

■ On a motion to dismiss indictment, "the [c]ourt must view the [i]ndictment's factual allegations as true, and must determine only whether the [i]ndictment is 'valid on its face.'" *U.S. v. Campbell*, No. 02–80863, 2006 WL 897436, at *2 (E.D.Mich. April 6, 2006) (citing *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956)). Accordingly, the court must resolve factual issues in this case, such as they exist, in favor of the indictment. With this standard in mind, the court turns to an analysis of the defendant's motion.

### II. SORNA

The Sex Offender Registration and Notification Act ("SORNA") was enacted in Title I of the Adam Walsh Child Protec-

tion and Safety Act, which was passed by Congress on July 27, 2006. SORNA establishes a national sex offender registry in order to "protect the public from sex offenders and offenders against children." 42 U.S.C. § 16901.

SORNA requires states to adopt its standards for sex offender registration and notification, and to conform their preexisting sex offender registries to statutory requirements. § 16912. SORNA also requires states to impose a "criminal penalty that includes a maximum term of imprisonment that is greater than 1 year" for a violation of its provisions. § 16913. States that fail to implement SORNA within three years of its passage face a ten percent reduction in federal justice funding. §§ 16924, 16925(d). As of June 26, 2008, neither New York nor Tennessee had implemented SORNA.

The statute states, in relevant part:

(a) In general

A sex offender shall register, and keep registration current, in each jurisdiction where the offender resides, where the offender is employed, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register—

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

(e) State penalty for failure to comply

Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter.

§ 16913.

On February 28, 2007, the Attorney General promulgated an interim rule, under the authority of § 16913(d), providing that "[t]he requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of the Act." 28 C.F.R. § 72.3 (2007).

In addition, SORNA creates a federal offense for failing to register as a sex offender. 18 U.S.C. § 2250(a). The statute provides:

Whoever—

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

*Id.*

### III. Commerce Clause

The defendant alleges that Congress exceeded its power under the Commerce Clause in enacting both 18 U.S.C. § 2250(a) and 42 U.S.C. § 16913. The Commerce Clause grants Congress the power to regulate "three broad categories of activity": (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "activities that substantially affect interstate commerce." *United States v. Lopez,* 514 U.S. 549, 558, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995); *see also United States v. Morrison,* 529 U.S. 598, 607–18, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

#### A. § 2250(a)

■ Section 2250(a) creates a federal offense whenever an individual (1) is required to register under SORNA; (2)

travels in interstate commerce; and (3) knowingly fails to register or update registration as a sex offender under SORNA. Mr. Harm alleges that § 2250(a) exceeds Congress' Commerce Clause power because the jurisdictional element—that the individual must travel in interstate commerce—is not enough to place the statute in the first or second *Lopez* category. The court disagrees, and finds that § 2250(a) falls within Congress' power to regulate "persons or things in interstate commerce." *Lopez,* 514 U.S. at 558, 115 S.Ct. 1624.

Federal courts have construed § 2250(a) to apply only to individuals who have traveled in interstate commerce at some time after the passage of the Act. This construction follows directly from the natural language of § 2250(a), which requires that the individual "travels" in interstate commerce, and not that the individual "traveled." *See, e.g., United States v. Smith,* 481 F.Supp.2d 846, 850–51 (E.D.Mich.2007) ("The Court assumes that Congress' choice of verb tense—*travels,* rather than *traveled*—was significant.") (emphasis in original). Accordingly, criminal penalties cannot be applied under § 2250(a) to any sex offender who has ever traveled in interstate commerce and failed to register. Nevertheless, as the defendant points out, § 2250(a) does not, like other federal statutes, require that the individuals' interstate travel be linked to their failure to register, such as by requiring sex offenders to travel from state to state for the purpose of evading the registration laws. In this respect, SORNA is unlike other federal criminal statutes that fall under Congress' Commerce Clause power. *See United States v. Williams,* 342 F.3d 350, 354 (4th Cir.2003) (upholding the Hobbs Act); *Hoke v. United States,* 227 U.S. 308, 321, 33 S.Ct. 281, 57 L.Ed. 523 (1913) (upholding the Mann Act).

However, the Commerce Clause does not require the jurisdictional element to be connected to the criminal act. Instead, as the Supreme Court stated in *Lopez*, Congress may, under the Commerce Clause, regulate persons "in interstate commerce" even though the threat at issue "may come only from intrastate activities." *Lopez*, 514 U.S. at 558, 115 S.Ct. 1624. In § 2250(a), the threat—that sex offenders may elude registry—is interstate in nature; however, the travel component is enough to bring the criminal penalty under the protection of the Commerce Clause. *See United States v. Waybright*, 561 F.Supp.2d 1154, 1160 ("[*Lopez*] encompasses § 2250(a) because the statute regulates sex offenders who travel in interstate commerce even though the threat Congress was attempting to address—failure to register as a sex offender—is an intrastate activity."); *see also Scarborough v. United States*, 431 U.S. 563, 568–69, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977) (rejecting the defendant's argument that the interstate travel of a firearm must be contemporaneous with the defendant's possession of the firearm); *United States v. Cummings*, 281 F.3d 1046, 1050 (9th Cir.2002) ("The cessation of movement does not preclude Congress's reach if the person or goods traveled in the channels of foreign commerce."). Accordingly, the court finds that § 2250(a) is a valid exercise of Congress' Commerce Clause power.

**B. § 16913**

 The defendant also alleges that Congress lacks the regulatory power to require state registration for individuals who have committed only state sex offenses under § 16913. Under this challenge, the registration system itself would be beyond the pale of Congressional authority. The government asserts that Congressional authority can be found both in the Commerce Clause power to regulate "activities that substantially affect interstate commerce," *Lopez*, 514 U.S. at 558, 115 S.Ct. 1624, and in the Necessary and Proper Clause.

Section 16913 requires all sex offenders residing in the United States to register, regardless of whether they have committed a state or federal crime, and regardless of whether they have traveled in interstate commerce. Conviction for failure to register under § 2250(a) is predicated on the defendant's duty to register under § 16913. Because § 16913 does not include a jurisdictional element of interstate commerce or activity, to be supported by the Commerce Clause, it must fall within the third *Lopez* category, regulation of "activities that substantially affect interstate commerce." *Lopez*, 514 U.S. at 558, 115 S.Ct. 1624. The United States alleges that § 16913 has a substantial effect on interstate commerce because it creates a national standard for registration that will, in conjunction with § 2250(a), affect "the many sex offenders who move, or seek employment or schooling in a different state, thereby traveling in interstate commerce." (Docket No. 24 at p. 7) In addition, "for individuals engaging in any commerce-related activity, personal safety and safety of their families is of a prime concern," and, finally, "economic development in certain places may be encouraged or discouraged depending on the safety level." (*Id.*) For these reasons, the United States alleges that § 16913 is "rationally related to SORNA's goal of preventing sex offenders from disappearing in a patchwork of state laws as they travel between states." (*Id.*)

Viewed by itself, it is difficult to distinguish § 16913 and its proposed connections with interstate commerce from the statutes at issue in *Lopez*, 514 U.S. at 558, 115 S.Ct. 1624, and *Morrison*, 529 U.S. at 607–18, 120 S.Ct. 1740. *Lopez* involved the

Gun Free School Zones Act, which created a federal crime for knowingly possessing a firearm in a school zone. 514 U.S. at 561–64, 115 S.Ct. 1624. The Court noted that the statute "by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms" and that it was "not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the interstate activity were regulated." *Id.* at 561, 115 S.Ct. 1624. The government argued that "possession of a firearm in a school zone may result in violent crime and that violent crime can be expected to affect the functioning of the national economy" by "spreading costs throughout the population" and making people unwilling to travel to unsafe areas. *Id.* at 564, 115 S.Ct. 1624. However, the Court rejected these theories, on the basis that if it were to accept them, it would be "hard pressed to posit any activity by an individual that Congress is without power to regulate." *Id.* Instead, the Court found that "[t]he possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at 567, 115 S.Ct. 1624.

In *Morrison,* 529 U.S. at 607–18, 120 S.Ct. 1740, the Court addressed the Violence Against Women Act ("VAWA"), which created a federal civil remedy for victims of gender-motivated violent crimes. Reviewing past cases, the Court noted that, "in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor." *Id.* at 610, 120 S.Ct. 1740 (citing *Lopez,* 514 U.S. at 559–60, 115 S.Ct. 1624). Reasoning that, "thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is econom-

ic in nature," the Court found that the government's proposed connections between VAWA and interstate commerce were too attenuated to meet the *Lopez* standard. *Id.* at 613, 115 S.Ct. 1624.

In *United States v. Waybright,* at 1164–65, the United States District Court for the District of Montana analogized SORNA to the statutes in *Lopez* and *Morrison,* finding that, "[t]racking sex offenders may enhance public safety and may in turn promote a more productive economy … [b]ut any effect on interstate commerce from requiring sex offenders to register is too attenuated to survive scrutiny under the Commerce Clause." The *Waybright* court went on to find that authority also did not exist in the Necessary and Proper Clause because " § 16913 is not a means to an end; it is the end of SORNA." *Id.* at 1166. That is, according to *Waybright,* the provisions creating the registration system itself cannot be "means … reasonably adapted to [the] legitimate ends" of provisions creating a criminal penalty for failure to register. *Id.* at 1165 (quoting *Gonzales v. Raich,* 545 U.S. 1, 35, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (Scalia, J., concurring)). Under *Waybright,* it is the penal statute—which, by itself, does fall under the Commerce Clause—that serves as a means to enforce § 16913. *Id.*

At first glance, the reasoning of *Waybright* appears to be persuasive. It is, however, very much an outlier. *See, e.g., United States v. Utesch,* No. 2:07–CR–105, 2008 WL 656066 at *14 (E.D.Term.2008) (and cases cited therein). The court is persuaded by a number of other district courts that 42 U.S.C. § 16913 and 18 U.S.C. § 2250(a) should be treated "as interrelated components of the larger whole of SORNA sufficient to overcome any deficiencies when viewing § 16913 in isolation." *United States v. Van Buren,* No. 3:08–CR–198, 2008 WL 3414012 at *12

(N.D.N.Y.2008); *see also United States v. Trent,* 568 F.Supp.2d 857, 864 (S.D.Ohio 2008) (holding that because the defendant had traveled in interstate commerce, § 16913(a) could validly be applied to him); *United States v. Ditomasso,* 552 F.Supp.2d 233, 245–46 (D.R.I.2008). A defendant cannot be convicted of a federal crime under SORNA without traveling through interstate commerce. Although SORNA does impose new registration guidelines on states, SORNA did not invent the concept of sex offender registries, but was enacted in a context in which all 50 states already have sex offender registry laws. The problem addressed by SORNA is not lack of registries, but coordination among registries and enforcement of registry requirements when sex offenders move across state lines.

Federal courts "have consistently recognized that federal statutes enacted to help states address problems that defy a local solution constitute an appropriate exercise of Congress's Commerce Clause power, because this power includes the authority 'to govern affairs which the individual states, with their limited territorial jurisdictions, are not fully capable of governing.' " *United States v. Reynard,* 473 F.3d 1008, 1023–24 (9th Cir.2007) (quoting *United States v. Black,* 125 F.3d 454, 459 (7th Cir.1997)); *see also United States v. Faasse,* 265 F.3d 475, 488–89 (6th Cir. 2001). The court is convinced that 42 U.S.C. § 16913 and 18 U.S.C. § 2250(a) must be analyzed together. *See Van Buren,* 2008 WL 3414012 at *12 ("[Section] 16913 and § 2250(a) are interrelated such that a facial challenge to one part of . . . SORNA cannot be resolved without resort to the totality of the statute.") When analyzed together, the jurisdictional requirement of interstate travel applicable to criminal prosecution brings the registration requirements set forth in § 16913 under the umbrella of the Commerce Clause.[1]

## IV. Due Process Clause

■ The defendant also alleges that 18 U.S.C. § 2250(a) violates the requirement of notice and fair warning incorporated in the Due Process Clause. The defendant alleges that neither SORNA nor the guidelines issued by the Attorney General provide any mechanism for giving notice of registration requirements to state offenders, such as himself, convicted prior to the law's enactment. Moreover, neither New York nor Tennessee had actually adopted the registration regulations in § 16913 at the time the violation is said to have occurred. There is no question that the defendant had notice of his Tennessee state registration requirements. The question is whether the plaintiff's notice of his duty to register under state law carries over to his duty to register under SORNA.

The court is persuaded by a large number of federal courts that the notice of the defendant's state duty does carry over. *See, e.g., U.S. v. Roberts,* 2007 WL 2155750 at *2 (W.D.Va.2007) (holding that, like regulated professionals and owners of firearms, sex offenders "must comply with the law even when it changes suddenly and without notice"); *United States v. Hester,* No. 1:07–CR–376, 2008 WL 351677 at *2 (N.D.N.Y.2008) (finding that the defendant "had sufficient notice that failure to register and update his registration was illegal" under SORNA because of the long-standing state registration laws). Although SORNA places requirements on states that New York and Tennessee had not yet met, the requirement that it places on individuals is simply to register. Even

---

1. Because the court finds that § 16913, in conjunction with $2250(a), falls under Congress' power to regulate persons in interstate commerce, it need not analyze whether the statute also falls under the Necessary and Proper Clause.

where states have not adopted the registration requirements, individuals can comply with SORNA by registering under the currently existing system. *See United States v. Utesch,* No. 2:07–CR–105, 2008 WL 656066 at *8 (E.D.Tenn.1998) ("The fact that the states have **not** yet met their obligations under SORNA (they have at least until July 27, 2009, to do so), is of no consequence in determining whether it was possible for the Defendant to meet his own obligations under the act.") (quoting *United States v. Adkins,* No. 1:07–CR–59, 2007 WL 4335457 at *6 (N.D.Ind.2007)). Accordingly, the defendant was adequately notified of his registration requirements under SORNA.

## V. Ex Post Facto Clause

 Next, the defendant challenges SORNA under the ex post facto clause. The ex post facto clause prohibits Congress from criminalizing conduct after it has already occurred and from increasing the punishment for a crime after it has been committed. *See Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); *Miller v. Florida,* 482 U.S. 423, 429, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); U.S. Const. Art. I, § 10, cl. 1. In addition, the constitutional prohibition applies "only to penal statutes which disadvantage the offender affected by them." *Youngblood,* 497 U.S. at 41, 110 S.Ct. 2715.

SORNA was enacted on July 27, 2006, and the defendant traveled from New York to Tennessee in April or May 2008. Therefore, SORNA did not criminalize or increase the punishment for the defendant's action after it occurred. The defendant argues that the relevant date is not when the statute was passed, but the date on which the relevant state had enacted SORNA. Because neither New York nor Tennessee had enacted SORNA at the time of his arrest, the defendant argues that the ex post facto clause applies. However, as discussed above, the defen-

dant's duty to register did not depend upon New York's or Tennessee's compliance with SORNA. *Utesch,* No. 2:07–CR–105, 2008 WL 656066 at *8. Instead, SORNA required the defendant to register in Tennessee, even if Tennessee had not adopted the new standards.

In addition, under the rule announced in *Smith v. Doe,* 538 U.S. 84, 90–91, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), SORNA does not violate the ex post facto clause because it is not penal in nature. In *Smith,* the Court analyzed whether an Alaska sex offender registration law violated the ex post facto clause by creating new requirements for previously convicted persons. *Id.* The act in *Smith,* like SORNA, subjected non-compliant sex offenders to criminal prosecution. *Id.* Nevertheless, the Court held that the purpose of the act was not to impose punishment, but to "enact a regulatory scheme that is civil and nonpunitive." *Id.* at 92, 123 S.Ct. 1140. The Court applied a two-part test, analyzing (1) whether the legislature's intent was to create a civil, nonpunitive scheme, and (2) whether, if so, the effects of the legislation were so punitive to negate that intent. *Id.* at 94–95, 123 S.Ct. 1140. The *Smith* court found that the Alaska legislature's intent had been to create a nonpunitive law because it had included language specifically stating that intent. *Id.* Next, the Court determined that the net effect of the law did not override that intent, even though the statute called for criminal action against violators because it had a rational connection to a nonpunitive purpose; namely, protecting public safety "which is advanced by alerting the public to the risk of sex offenders in their community." *Id.* (internal quotations omitted).

As the Middle District of Louisiana held in *United States v. Pitts,* No 07–157–A, 2007 WL 3353423 at *7 (M.D.La.2007):

The same analysis applied to the similar facts in the case at bar must produce the

same result. As to the first prong of the test, the Congress clearly intended this to be a civil, nonpunitive, regulatory regime. Congress stated that intent in the text of the statute by declaring that the Sex Offender Registration and Notification Act was established "[i]n order to protect the public from sex offenders and offenders against children." *See* 42 U.S.C. § 16901. Nothing in the Walsh Act suggests that this was intended to be anything else.

Therefore, the analysis progresses to the second prong of the test applied in *Smith v. Doe*—whether the effects of the act are so punitive in purpose or effect as to negate the intent of Congress and result in a violation of the Ex Post Facto Clause. Again, because of the marked similarities between the Alaskan statute and the Act at issue in the case at bar, the court concludes that the effects do not negate the intent of Congress. Like the Alaskan statute, the requirements of the Sex Offender Registration and Notification Act: 1) are new and not traditionally regarded as a punishment; 2) do not subject offenders to affirmative disability or restraint; 3) do not promote the traditional aims of punishment; 4) have a rational connection to a legitimate nonpunitive purpose; and 5) are not excessive with respect to the Act's purpose.

*See also United States v. Adkins*, No. 1:07–CR–59, 2007 WL 4335457 at *4 (N.D.Ind. 2007). For these reasons, the court finds that SORNA does not violate the ex post facto clause.

## VI. Non–Delegation Doctrine

■■■■ Finally, the defendant argues that, by delegating to the attorney general the authority to decide how the registration requirements will be applied to sex offenders convicted "before July 27, 2006 or its implementation in a particular juris-

diction," 42 U.S.C. § 16913(d) violates the non-delegation doctrine. Congress is vested with the sole authority to legislate. U.S. Const., Art. I, §§ 1, 8. Under the non-delegation doctrine, "[c]ongress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested." *Schechter Poultry Corp. v. United States*, 295 U.S. 495, 529, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). But the non-delegation doctrine "does not keep Congress from obtaining the assistance of its coordinate branches; it merely requires Congress to provide clear guidance and delineate the boundaries of delegated authority." *Van Buren*, 2008 WL 3414012 at *15 (quoting *Waybright*, 2008 WL 2380946 at *14); *see also Mistretta v. United States*, 488 U.S. 361, 372–73, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

This court agrees with the reasoning in *Waybright* that, "[w]hen § 16913 is read as a whole, it is clear the statute only authorizes the Attorney General to promulgate regulations in a limited number of circumstances." *Waybright*, 2008 WL 2380946 at *14; *see also Van Buren*, 2008 WL 3414012 at *15. "The Attorney General's authority under § 16913(d) extends only to those currently unregistered offenders literally unable to comply with (b) because of the age of their convictions...." *Van Buren*, 2008 WL 3414012 at *15 (internal quotations omitted); *see also United States v. Roberts*, 2007 WL 2155750 at *2 (W.D.Va.2007). This delegation is limited in nature and does not afford the Attorney General the authority to legislate. The court holds that § 16913(d) does not offend the principles of the non-delegation doctrine. *Id.*

## CONCLUSION

For the reasons stated herein, the defendant's Motion to Dismiss the Indictment will be denied.

An appropriate order will enter.

## ORDER

For the reasons expressed in the accompanying Memorandum, the defendant's Motion to Dismiss the Indictment (Docket No. 21) is **DENIED.**

It is so ordered.