UNITED STATES of America,
Plaintiff,

v.

Bernard Lenwood WAYBRIGHT,
Defendants.

No. CR 08–16–M–DWM.

United States District Court,
D. Montana,
Missoula Division.

June 11, 2008.

John Rhodes, Federal Defenders of Montana, Missoula, MT, for Defendant.

Marcia Hurd, U.S. Attorneys Office, Billings, MT, for Plaintiff.

ORDER

DONALD W. MOLLOY, District Judge.

## I. Introduction

Bernard Lenwood Waybright was charged in a two-count indictment with failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a). Section 2250(a) is part of the Sex Offender Registration and Notification Act ("SORNA" or the "Act"). The section makes it a federal crime for a sex offender who is required to register under SORNA to travel in interstate commerce and then fail to register. Waybright was convicted of a crime in West Virginia that obligated him to register under SORNA. He traveled to Montana, and did not register with local law enforcement authorities in Montana.

Waybright filed three motions to dismiss the indictment, asserting seven different legal grounds for dismissal. He contends: (1) Congress exceeded its power under the Commerce Clause in enacting SORNA's registration requirements and making it a federal crime to fail to register; (2) SORNA violates the Tenth Amendment because it requires state officials to accept federally-mandated sex offender registrations before any state chooses to implement SORNA; (3) SORNA violates the right to travel because it subjects sex offenders who move to another state to stiffer registration requirements and penalties than those that remain in a single state; (4) Congress violated the non-delegation doctrine by authorizing the Attorney General to determine whether SORNA applied retroactively; (5) regulations issued by the Attorney General pursuant to SORNA violate the Administrative Procedure Act because they were promulgated without notice and comment; (6) Waybright cannot

be convicted of violating 18 U.S.C. § 2250(a) because Montana has not implemented SORNA; and (7) Waybright's conviction would violate due process of law because Waybright was not notified of his obligation to register under SORNA. Oral argument on Waybright's motions took place on June 4, 2008.

No court of appeals has addressed Waybright's arguments. It is evident that the same or similar arguments have been raised in district courts around the country. These courts have mostly rejected such challenges for varying reasons. In my view, those district courts have it right for the most part. I conclude that all of Waybright's arguments, except one, lack merit. I agree with Waybright's claim that enactment of 42 U.S.C. § 16913, which requires all sex offenders to register regardless of whether they travel in interstate commerce, is not a valid exercise of Congress' power under the Constitution. I therefore declare 42 U.S.C. § 16913 unconstitutional. Moreover, because Waybright cannot be convicted of failing to register under § 2250(a) unless the government proves he was required to register under § 16913, the Indictment against Waybright must be dismissed without prejudice.

## II. Factual Background

On May 5, 2004, Waybright was convicted in West Virginia state court of sexual abuse in the second degree, a misdemeanor.[1] He was subsequently sentenced to a suspended one-year term of imprisonment and placed on probation for five years. The Sentencing Order explicitly required Waybright to "register as a sex offender as required by West Virginia Code § 15–2–1, et seq."[2] As a condition of his probation, Waybright was required to "comply with all the requirements of the Sexual Offender Registration Law and ... register with the State Police Detachment in Kingwood, Preston County, West Virginia within [ten days of sentencing]." Under West Virginia law, Waybright was required to register for at least ten years from the date he was placed on probation. W. Va.Code § 15–12–4.

He initially registered as a sex offender in West Virginia on July 12, 2004. As part of the registration process, Waybright signed a form entitled "Notification of Sex Offender Responsibility." Waybright acknowledged he had read and understood his registration obligations by signing this form. Specifically, the form stated:

> I understand that I must report to the local detachment of the West Virginia State Police within ten (10) days any change in my registration information.... If this is a change in address or residence to another state I understand that I must advise the West Virginia State Police of the new address ten (10) days prior to the move and I must register in that state and comply with the laws of that state.
>
> . . .
>
> I understand that if I am required to register as a resident of West Virginia and I am employed, carry on a vocation, attend school or training or am a visitor in another state, I must register with that state and comply with the laws of that state.

The form also told him that failing to register or provide notification of a change

---

1. "A person is guilty of sexual abuse in the second degree when such person subjects another person to sexual contact who is mentally defective or mentally incapacitated." W. Va.Code § 61–8B–8 (2004).

2. The Sentencing Order's reference to West Virginia Code § 15–2–1 appears to be a typo. In 2004 and at present, West Virginia's Sex Offender Registration Act is found at West Virginia Code § 15–12–1, et seq.

of information is a misdemeanor under West Virginia law. *See id.* § 15–12–8. Waybright updated his West Virginia registration on July 19, 2006. When he did, the "Notification of Sex Offender Responsibility" form was read to him and he again signed the form indicating he understood his registration obligations.

In early 2008, the Missoula County Sheriffs Office received information that Waybright was living in Montana. The Sheriffs Office conducted a records check on Waybright and discovered he had an outstanding warrant in West Virginia for failure to register as a sex offender. The records check also revealed Waybright surrendered his West Virginia drivers license and obtained a Montana drivers license on May 9, 2006. The Sheriffs Office subsequently contacted Nina Cramer, who owned the residence where Waybright was living while in Montana. Cramer informed officers Waybright made several trips to Montana, stayed for a number of days, and then returned to West Virginia to care for his ill mother. According to Cramer, Waybright stayed at her residence in Missoula from May 2006 to July 12, 2006; April 9, 2007 to May 7, 2007; and October 12, 2007 to November 1, 2007. Waybright did not register as a sex offender with the Missoula County Sheriffs Office or any other Montana law enforcement agency during these visits.

A sexual offender must register within three business days of entering Montana "for the purpose of residing or setting up a temporary residence for 10 days or more or for an aggregate period exceeding 30 days in a calendar year." Mont.Code Ann. § 46–23–504(c). "Sexual offender" is defined as "a person who has been convicted of ... a sexual ... offense." *Id.* § 46–23–502(10). "Sexual offense," in turn, is defined as "any violation of a law of another state ... for which the offender was required to register as a sexual offender after an adjudication or conviction." *Id.*

§ 46–23–502(9)(b). Waybright therefore was required to register as a sex offender under Montana law during the time he was staying at Cramer's residence.

Waybright was charged in a two-count indictment with failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a). Count I of the indictment covers the time period from April 9, 2007 to May 7, 2007; Count II relates to the time period from October 12, 2007 to November 1, 2007. The indictment alleges Waybright, a person required to register under SORNA by reason of his West Virginia conviction for sexual abuse in the second degree, traveled in interstate commerce to Montana, and knowingly failed to register as a sex offender.

### III. Analysis

### A. SORNA

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"). Title I of the Adam Walsh Act contains the Sex Offender Registration and Notification Act. SORNA establishes a national sex offender registry for the purpose of "protect[ing] the public from sex offenders and offenders against children." 42 U.S.C. § 16901.

The Act defines the term "sex offender" as "an individual who was convicted of a sex offense." *Id.* § 16911(1). Sex offenses include criminal offenses that have an element involving a sexual act or sexual contact with another and certain specified offenses against minors. *Id.* § 16911(5)(A). SORNA classifies sex offenders into three different tiers based on the nature of their crime of conviction. *Id.* § 16911(2)-(4). A sex offender's classification determines the number of years the offender must remain registered after conviction and the frequency with which the

offender's information is verified. *Id.* §§ 16915–16916.

SORNA requires states to incorporate its standards for sex offender registration and notification into their own laws and maintain a sex offender registry that conforms to certain statutory requirements. *Id.* § 16912. The Act also requires states to impose criminal penalties for a violation of its provisions. *Id.* § 16913 (requiring "criminal penalty that includes a maximum term of imprisonment that is greater than 1 year"). Any state that fails to implement SORNA's requirements within three years faces a ten percent reduction in federal justice funding. *Id.* §§ 16924, 16925(d). As of June 10, 2008, no state has fully complied with SORNA's requirements.[3]

SORNA specifies when a sex offender must first register and then sets forth the sex offender's continuing obligation to keep his registration current. *Id.* § 16913. The statute states, in relevant part:

(a) In general

A sex offender shall register, and keep registration current, in each jurisdiction where the offender resides, where the offender is employed, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register—

(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

(2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section

The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

*Id.* § 16913.

Pursuant to § 16913(d), the Attorney General issued an interim rule on February 28, 2007. The rule provided, "[t]he requirements of the Sex Offender Registration and Notification Act apply to all

---

**3.** The Jacob Wetterling Act was in effect prior to the enactment of the Adam Walsh Act. The Jacob Wetterling Act provided federal funding to states that enacted sex offender registration laws commonly known as "Megan's Law." 42 U.S.C. § 14071, *et seq.* It also provided for criminal penalties of up to one year imprisonment for sex offenders who failed to register in the state where they resided, worked, or were a student. *Id.* § 14072(i). Prior to the enactment of the Adam Walsh Act, all states had enacted some form of sex offender registration law.

sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of the Act." 28 C.F.R. § 72.3 (2007).

SORNA also created a new federal offense for failing to register as a sex offender, with a maximum penalty of ten years imprisonment. 18 U.S.C. § 2250(a). The federal criminal statute provides:

Whoever—

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

*Id.* § 2250(a).

## B. Commerce Clause

Waybright argues Congress exceeded its power under the Commerce Clause by enacting two specific provisions of SORNA—18 U.S.C. § 2250(a) and 42 U.S.C. § 16913. Section 2250(a) creates a federal offense where an individual (1) is required to register under SORNA; (2) travels in interstate commerce; and (3) knowingly fails to register or update a registration as required by SORNA. Section 16913 imposes registration requirements on all sex offenders in the United States regardless of whether they travel in interstate commerce.

▪ The Commerce Clause delegates to Congress the power "[t]o regulate Commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3. Congress has power to regulate "three broad categories of activity" under the Commerce Clause: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "activities that substantially affect interstate commerce." *United States v. Lopez,* 514 U.S. 549, 558, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

### 1. 18 U.S.C. § 2250(a)

Waybright asserts § 2250(a) violates the Commerce Clause because Congress cannot federally criminalize a local sex offender's failure to register in a state-run registry. Although § 2250(a) contains a jurisdictional element requiring a sex offender to travel in interstate commerce, Waybright maintains this element is insufficient to bring the Act within Congress' Commerce Clause power because the Act does not relate the purpose of the travel to the failure to register. Waybright further notes § 2250(a) does not specify when the travel must have occurred. According to Waybright, upholding § 2250(a) without requiring a temporal connection between the travel and failure to register would allow Congress to federalize nearly any local criminal offense simply by making it a crime for someone who committed the offense to travel in interstate commerce at some point in his life.

Section 2250(a) falls within the first and second categories of activity Congress can regulate under the Commerce Clause because it requires sex offenders to use the channels of interstate commerce or travel

in interstate commerce before subjecting them to criminal penalties. Waybright's assertion that § 2250(a) does not require sex offenders' interstate travel to be linked to their failure to register is accurate. The statute does not, for example, require sex offenders to cross state lines for the purpose of evading registration laws. It is thus distinguishable from other federal criminal statutes that have been upheld against constitutional challenges based on their requirement of a direct link between the criminal act and travel in interstate commerce. *See, e.g., Hoke v. United States,* 227 U.S. 308, 321, 33 S.Ct. 281, 57 L.Ed. 523 (1913) (upholding the Mann Act, which criminalizes the knowing transportation of an individual in interstate commerce with the intent that such individual engage in prostitution); *United States v. Williams,* 342 F.3d 350, 354 (4th Cir.2003) (upholding the Hobbs Act, which prohibits, *inter alia,* robbery that obstructs, delays, or affects commerce or the movement of any article or commodity in commerce). Section 2250(a)'s failure to require a connection between the jurisdictional element of travel and the criminal act of failing to register, however, is not fatal.

 As an initial matter, the Supreme Court's formulation of the second category of activity subject to regulation under the Commerce Clause explicitly includes the activity criminalized by § 2250(a). Under this category, Congress may regulate "persons ... in interstate commerce, even though the threat may come only from intrastate activities." *Lopez,* 514 U.S. at 558, 115 S.Ct. 1624. This language encompasses § 2250(a) because the statute regulates sex offenders who travel in interstate commerce even though the threat Congress was attempting to address—failure to register as a sex offender—is an intrastate activity.

Section 2250(a)'s constitutionality is also supported by cases upholding other federal

statutes that criminalize conduct with respect to things or persons that have traveled in interstate commerce regardless of whether the conduct criminalized is related to the prior interstate travel. In *United States v. Polanco,* 93 F.3d 555, 563 (9th Cir.1996), for example, the Ninth Circuit upheld the federal firearms statute against a Commerce Clause challenge. The statute criminalizes, *inter alia,* possession by a felon of a firearm "in or affecting commerce." 18 U.S.C. § 922(g). Prior to the Ninth Circuit's decision, the Supreme Court determined the jurisdictional element of "in or affecting commerce" was satisfied by proof that the possessed firearm previously traveled at some time in interstate commerce. *Scarborough v. United States,* 431 U.S. 563, 577, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977). In so doing, the Court rejected the defendant's assertion that the interstate travel of the firearm must be contemporaneous with the defendant's possession of it. *Id.* at 568–69, 97 S.Ct. 1963. In subsequently upholding the federal firearms statute in *Polanco,* the Ninth Circuit affirmed that a firearm's travel in interstate commerce is sufficient to bring a felon's possession of that firearm within Congress' power under the Commerce Clause regardless of whether the felon had any connection to the firearm when it traveled in interstate commerce. 93 F.3d at 563; *see also Gonzales v. Raich,* 545 U.S. 1, 23, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005) (observing Gun–Free School Zones Act struck down in *Lopez* did not require "that the possession of a gun have any connection to past interstate activity"); *United States v. Dorsey,* 418 F.3d 1038, 1045–46 (9th Cir.2005) (upholding amended version of statute at issue in *Lopez* because it contained a jurisdictional element requiring that the firearm "moved in ... interstate ... commerce"); *United States v. Oliver,* 60 F.3d 547, 550 (9th Cir.1995) (upholding against Commerce Clause chal-

lenge the federal carjacking statute, which criminalizes the forcible taking of a car "that has been transported, shipped, or received in interstate or foreign commerce"). Similarly, here, a sex offender's travel in interstate commerce is sufficient to bring his subsequent failure to register within Congress' power to regulate even though the sex offender's travel alone is not criminal.[4]

The constitutionality of § 2250(a) is further supported by *United States v. Cummings*, 281 F.3d 1046 (9th Cir.2002). In *Cummings*, the Ninth Circuit upheld the International Parental Kidnapping Crime Act, which makes it a crime to "remove[ ] a child from the United States ... or retain[ ] a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights." *Id.* at 1049–50. The defendant in *Cummings* challenged the retention prong of the statute, arguing it did not regulate the channels of foreign commerce because the targeted activity (i.e., retention) occurred after movement in foreign commerce had ceased. *Id.* The court nevertheless upheld the statute as a valid exercise of Congress' power to regulate the channels of foreign commerce.[5] *Id.* The Court noted the statute requires travel in foreign commerce because the child who is unlawfully retained in another country must have previously been in the United States. *Id.* at 1049. The court further determined the fact that travel in foreign commerce ceased before

the crime of retention was completed was irrelevant: "The cessation of movement does not preclude Congress's reach if the person or goods traveled in the channels of foreign commerce." *Id.* at 1050. Similarly, here, the cessation of a sex offender's travel in interstate commerce does not preclude Congress from making his subsequent failure to register criminal. A sex offender's criminal act—failing to register—may be removed from his travel in interstate commerce but that does not preclude Congress from criminalizing his failure to register. Section 2250(a) is a valid exercise of Congress' power under the Commerce Clause. Waybright's challenge to § 2250(a) fails.

### 2. 42 U.S.C. § 16913

Waybright asserts, even if § 2250(a) is a valid exercise of Congress' Commerce Clause power, he cannot be convicted under the statute because he should not have been required to register under § 16913 in the first place. According to Waybright, the registration requirements found at § 16913 also exceed Congress' power under the Commerce Clause. Waybright contends § 16913 is unconstitutional because Congress lacks the power to force citizens who have been convicted of purely local offenses under state law to register as sex offenders.

■ A conviction for failure to register as a sex offender is predicated upon proof that the defendant was required to regis-

---

**4.** During oral argument, Waybright attempted to distinguish the federal firearms statute from 18 U.S.C. § 2250(a) by asserting the firearms statute requires a defendant to possess a firearm for criminal purposes whereas the interstate travel element of § 2250(a) need not be related to the criminal act of failing to register. Waybright's characterization of the federal firearms statute is not accurate. The statute does not require a felon to possess a firearm for criminal purposes; it criminalizes

mere possession of a firearm. 18 U.S.C. 922(g).

**5.** Although *Cummings* involved Congress' power under the Foreign Commerce Clause, which generally grants Congress broader powers than its domestic counterpart, the court relied on domestic Commerce Clause jurisprudence in reaching its decision. *See United States v. Cummings*, 281 F.3d 1046, 1049 n. 1 (9th Cir.2002).

ter under § 16913. 18 U.S.C. § 2250(a). Section 16913, in turn, requires all sex offenders in the United States to register. Unlike § 2250(a), its requirements are not limited to only those sex offenders who travel in interstate commerce. By its terms, § 16913 does not regulate the use of the channels of interstate commerce or the instrumentalities of interstate commerce. Therefore, it cannot be upheld under either of the first two categories of activity subject to regulation under the Commerce Clause. Instead, if it is to be sustained under the Commerce Clause it must fall within the third *Lopez* category, i.e., regulation of "activities that substantially affect interstate commerce." [6] 514 U.S. at 558, 115 S.Ct. 1624.

Few courts have considered whether § 16913, as opposed to § 2250(a), is a valid exercise of Congress' power to regulate activities that substantially affect interstate commerce. Not surprisingly, the cases that have addressed the question rely heavily on two recent Supreme Court opinions striking down statutes under the Commerce Clause. *See Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626; *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

In *Lopez*, the Supreme Court considered four factors in determining whether a federal statute regulates activity that substantially affects interstate commerce. 514 U.S. at 561–64, 115 S.Ct. 1624. They are:

(1) whether the regulated activity is economic in nature; (2) whether the statute contains a jurisdictional element which establishes "an explicit connection with or effect on interstate commerce;" (3) whether Congress made express findings regarding the effects of the regulated activity on interstate commerce; and (4) the link between the regulated activity and its substantial effect on interstate commerce. *Id.*

The Court in *Lopez* determined the Gun–Free School Zones Act, which made it a federal crime to knowingly possess a firearm in a school zone, did not satisfy any of these factors. *Id.* The Court first noted the statute "by its terms has nothing to do with commerce or any sort of economic enterprise, however broadly one might define those terms." *Id.* at 561, 115 S.Ct. 1624. Nor was the statute an "essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id.* Second, the statute lacked an express jurisdictional element "which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Id.* at 561–62, 115 S.Ct. 1624. Third, the legislative history of the statute did not contain express congressional findings regarding the effects on interstate commerce of gun possession in school zones. *Id.* at

---

**6.** Justice Scalia's concurring opinion, and to a lesser extent, the majority opinion, in *Gonzales v. Raich* recognized that Congress' power to regulate activities under the third *Lopez* category is not derived from the Commerce Clause alone. *Raich*, 545 U.S. 1, 5, 17, 22, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005); *id.* at 34, 125 S.Ct. 2195 (Scalia, J., concurring). Rather, it results from the interplay between the Commerce Clause and the Necessary and Proper Clause. *Id.* In a case relied on by the United States, however, the district court undertook separate analyses of the constitution-

ality of § 16913 under the *third* Lopez category and the Necessary and Proper Clause. *See United States v. Thomas*, 534 F.Supp.2d 912, 920–22 (N.D.Iowa 2008). Moreover, the interplay between the Commerce Clause and the Necessary and Proper Clause may permit Congress to regulate categories of activity beyond those that substantially affect interstate commerce. *Raich*, 545 U.S. at 34–35, 125 S.Ct. 2195 (Scalia, J., concurring). For these reasons, I will discuss the constitutionality of § 16913 under the Necessary and Proper Clause separately below.

562–63, 115 S.Ct. 1624. Lastly, the Court rejected the government's "costs of crime" and "national productivity" arguments for upholding the statute. *Id.* at 563–64, 115 S.Ct. 1624. The government argued that possession of a firearm in a school zone could result in violent crime and violent crime would affect the national economy by driving up the cost of insurance, reducing the willingness of individuals to travel throughout the country, and crippling the educational process. *Id.* The Court rejected these attenuated effects recognizing that acceptance of the argument would grant Congress unlimited power under the Commerce Clause. *Id.*

A similar result was reached in *Morrison.* The Court relied on the same factors to strike down a statute that created a federal civil remedy for victims of gender-motivated crimes of violence. 529 U.S. at 607–18, 120 S.Ct. 1740. The statute did not regulate economic activity or contain a jurisdictional element. *Id.* at 613, 120 S.Ct. 1740. Moreover, although the statute was supported by express congressional findings regarding the effects upon interstate commerce of gender-motivated violence, the congressional findings relied on the same "costs of crime" and "national productivity" arguments the Court rejected in *Lopez. Id.* at 614–15, 115 S.Ct. 1624.

The United States relies on *United States v. Passaro,* CR 07–2308–BEN (S.D.Cal. Dec. 17, 2007), in urging the Court to uphold § 16913. The *Passaro* court found § 16913 was a valid exercise of Congress' Commerce Clause power under the factors enumerated in *Lopez* and *Morrison. Passaro,* CR 07–2308–BEN, at 10–11. The court acknowledged § 16913 does not regulate commercial or economic activity and does not contain a jurisdictional element. *Id.* at 7, 10–11. Nevertheless, it concluded the statute regulated activity that substantially affects interstate commerce for two reasons. First, the statute is an essential part of a larger regulation of economic activity. *Id.* at 7. Specifically, § 16913 is part of the Adam Walsh Act, which also regulates interstate distribution of child pornography. *Id.* at 7–9. According to the court, Congress' regulation of child pornography—an economic activity—could be undercut if sex offenders were not regulated. *Id.* Second, the court found a connection between the regulation of sex offenders and interstate commerce. *Id.* at 9. Relying on an argument similar to the "cost of crime" and "national productivity" arguments rejected in *Lopez* and *Morrison,* the court wrote:

> Congress intended (in enacting SORNA) to protect public safety. It is rational to conclude that maintaining a comprehensive national registry of sex offenders affects interstate commerce. For individuals engaging in any commerce-related activity, personal safety and safety of their families is a prime concern. Economic development in certain areas may be encouraged or discouraged depending on the safety level. Requiring sex offenders to register within three days of a change in residence is a means reasonably adapted to achieving SORNA's purpose.

*Id.* at 9.

At oral argument on Waybright's motion to dismiss, the United States changed course and conceded § 16913 could not be upheld under the Commerce Clause alone. The concession is right. Section 16913 has nothing to do with commerce or any sort of economic enterprise; it regulates purely local, non-economic activity. While certain sex offenses may be commercial or economic in nature (e.g., child pornography), sex offenders themselves are not necessarily engaged in commercial or economic activity. Even though the Adam Walsh Act

regulates some sex offenses that are commercial (e.g., the distribution of child pornography), its regulation of sex offenders is not indispensable to the success of its other provisions. Unlike § 2250(a), § 16913 has no express jurisdictional element to limit its reach to sex offenders connected with or affecting interstate commerce. SORNA's legislative history contains no express congressional findings regarding the effects of sex offender registration on interstate commerce. Tracking sex offenders may enhance public safety and may in turn promote a more productive economy as explained by the court in *Passaro*. But, any effect on interstate commerce from requiring sex offenders to register is too attenuated to survive scrutiny under the Commerce Clause. *See Lopez*, 514 U.S. at 563–64, 115 S.Ct. 1624; *Morrison*, 529 U.S. at 617, 120 S.Ct. 1740. For these reasons, § 16913 is not a valid exercise of Congress' Commerce Clause power.

Because § 16913 cannot be sustained under the Commerce Clause, it is necessary to consider whether the statute is a valid exercise of any other power delegated to Congress in the Constitution. Several district courts have approved of Congress' enactment of § 16913 pursuant to powers other than the Commerce Clause power. In *United States v. Thomas*, 534 F.Supp.2d 912, 920–22 (N.D.Iowa 2008), for example, the court determined enactment of § 16913 was not within Congress' Commerce Clause power, but nevertheless upheld the statute as a valid exercise of Congress' power under the Necessary and Proper Clause. The Necessary and Proper Clause authorizes Congress to "make all Laws which shall be necessary and proper for carrying into Execution the [Congressional] Powers" enumerated in the Constitution. U.S. Const. art. I, § 8, cl. 18. The Supreme Court explained the scope of the Necessary and Proper Clause in *McCul-*

*loch v. Maryland,* 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819), stating:

[W]e think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.

■ The Necessary and Proper Clause permits Congress to regulate intrastate activities that do not involve interstate commerce if such regulation is necessary to make a regulation of interstate commerce effective. *Raich,* 545 U.S. at 35, 125 S.Ct. 2195 (Scalia, J., concurring). "The relevant question is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power." *Id.*

The *Thomas* court determined § 16913 was an appropriate and reasonably adapted means for Congress to attain the legitimate end of § 2250(a)—monitoring sex offenders who cross state lines. 534 F.Supp.2d at 921. The court reasoned as follows:

To be certain, § 16913's blanket-registration requirement is not narrowly tailored or absolutely necessary to [monitor sex offenders who cross state lines]. For example, Congress could have taken a less drastic step and only required sex offenders who have certain qualifying life events (e.g., a change in employment, school or residence) and actually travel in interstate commerce to register immediately after such travel takes

**1166**

place. Instead, § 16913 is over-inclusive and reaches those sex offenders who change jobs, schools or residences but never travel across state lines. Even so, the court concludes that § 16913 represents a reasonable, good-faith effort on the part of Congress to monitor sex offenders who cross state lines. It must be remembered that we live in a very mobile society. There can be no doubt that sex offenders, like other Americans, frequently change jobs, schools or residences. Congress may have determined that it was unworkable, as a practical matter, to devise and enforce a sex-offender registration system that could monitor only those sex offenders who traveled in interstate commerce. Recognizing the federalism concerns that the Supreme Court expressed in *Lopez* and *Morrison,* however, Congress limited federal criminal enforcement of § 16913 to instances in which the sex offender crosses state lines. Congress must be afforded the opportunity to use its discretion with respect to the means by which its powers are to be carried into execution ... in the manner most beneficial to the people.

*Id.* at 921–22 (citations, quotations, alterations, and footnotes omitted).

■ At oral argument, the United States urged the Court to adopt the reasoning of *Thomas* to uphold § 16913. *Thomas* is not persuasive. *Thomas'* analysis relies on Justice Scalia's characterization of the interplay between the Commerce Clause and the Necessary and Proper Clause in *Raich. Thomas,* 534 F.Supp.2d at 921. *Raich* in turn addressed whether Congress could regulate the local cultivation of marijuana for medicinal purposes as part of a larger regulatory scheme—the Controlled Substances Act ("CSA")—aimed at combating interstate trafficking in illicit drugs. 545 U.S. at 9, 125 S.Ct. 2195. In concluding the regulation of intrastate marijuana cultiva-

tion was necessary to regulate interstate trafficking in marijuana, and thus upholding the CSA, the Court relied heavily on the economic and commercial nature of the drug trade. *Id.* at 18–19, 22, 125 S.Ct. 2195. There is an established, and lucrative, interstate market for controlled substances. Prohibiting the intrastate possession or manufacture of controlled substances is a rational means of regulating that product. *Id.* at 26, 125 S.Ct. 2195. The Court specifically distinguished the statutes at issue in *Lopez* and *Morrison* from the CSA by acknowledging that the former statutes dealt with non-economic activities. *Id.* at 23–25, 125 S.Ct. 2195; *id.* at 38, 125 S.Ct. 2195 (Scalia, J., concurring) ("[T]he power to enact laws enabling effective regulation of interstate commerce can only be exercised in conjunction with congressional regulation of an interstate market."). Like the statutes at issue in *Lopez* and *Morrison,* SORNA does not regulate any sort of economic or commercial activity. Sex offenders are not fungible commodities. There is no market for sex offenders. So, Congress does not need to regulate sex offenders who remain in a single state in order to effectively regulate sex offenders who travel in interstate commerce.

The *Thomas* court's reliance on *Raich* is also unpersuasive because § 16913 is not a means to an end; it is the end of SORNA. *Raich* recognized that Congress can regulate interstate trafficking in illicit drugs under the Commerce Clause. 545 U.S. at 15, 125 S.Ct. 2195. The issue considered was whether Congress could regulate activities beyond the scope of its Commerce Clause power in order to fill in gaps left in the CSA because of the limits of that power. *Id.* The Court approved of such a practice in *Raich,* finding that the regulation of the intrastate cultivation of marijuana was "merely one of many essential part[s] of a larger regulation of economic

activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Id.* at 24–25, 125 S.Ct. 2195 (quotation omitted); *see also id.* at 36, 125 S.Ct. 2195 (Scalia, J., concurring).

Unlike the intrastate regulation approved of in *Raich*, § 16913 is not one of many essential parts of a larger regulatory scheme. Nor is it intended to fill in the gaps in an otherwise valid exercise of Congress' power. The United States analogizes § 2250(a) to the CSA's regulation of interstate trafficking in illicit drugs. Unlike the regulation of interstate drug trafficking, the creation of a federal crime for sex offenders who travel in interstate commerce and fail to register is not the overriding purpose of SORNA. The purpose of the Act is to "establish[ ] a comprehensive national system for the registration of [sex offenders]." 42 U.S.C. § 16901. This primary purpose is accomplished by the enactment of § 16913. Unlike the CSA, which utilized the necessary and proper power to fill in the gaps of an overarching statutory scheme that was valid under the Commerce Clause power, SORNA attempts to utilize the necessary and proper power to enact an overarching statutory scheme based on the existence of Commerce Clause authority to enact a small part of that larger scheme. The Necessary and Proper Clause was not intended to bestow this authority on Congress. *See Maryland v. Wirtz,* 392 U.S. 183, 197 n. 27, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968) ("Congress may [not] use a relatively trivial impact on commerce as an excuse for broad general regulation of state or private activities."). The Necessary and Proper Clause can come to the aid of validly exercised commerce power but the commerce power cannot come to the aid of the Necessary and Proper Clause. Because the regulation of sex offenders is not economic or commercial in nature and § 16913 is not merely a means to creating

a federal crime for sex offenders who travel in interstate commerce and fail to register, *Thomas*' reliance on the Necessary and Proper Clause to uphold § 16913 is not persuasive.

Alternatively, the United States relies on *United States v. Cardenas,* 2007 WL 4245913 (S.D.Fl. Nov.29, 2007), in urging the Court to uphold § 16913. *Cardenas* upheld § 16913 under yet another Congressional power—the spending power. The court in *Cardenas* read § 16913's registration requirements as part of SORNA's direction to the states. *Id.* at *12. *Cardenas* determined § 16913, as part of Subtitle (A) of SORNA, just sets forth the requirements of the sex offender registry and notification program that states must implement to be in compliance with SORNA and receive full federal funding. *Id.* Because Congress may encourage the states to enact laws pursuant to its spending power, *see South Dakota v. Dole,* 483 U.S. 203, 206, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987), the court concluded § 16913 was not unconstitutional. *Cardenas,* 2007 WL 4245913, *12; *see also United States v. Pitts,* 2007 WL 3353423, *4–*5 (M.D.La. Nov.7, 2007) (employing the same reasoning to uphold § 16913).

The *Cardenas* court's analysis is not persuasive either because it contravenes the plain language of § 16913. Section 16913 is directed at individuals. *See, e.g.,* 42 U.S.C. § 16913(a) ("A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."). The provisions of SORNA enacted in furtherance of Congress' spending power are addressed to the states, not to individual offenders. *See, e.g., id.* § 16912(a) ("Each jurisdiction shall maintain a jurisdiction-wide sex offender registry ..."); *id.* § 16914 ("The jurisdiction

in which the sex offender registers shall ensure that the following information is included in the registry ...". If Congress had intended § 16913 to be a direction to the states it would have used language commanding each jurisdiction to require sex offenders to register. Additionally, if § 16913 was an exercise of Congress' spending power, it would not currently apply to any sex offender because no state has implemented SORNA. Section 16913 cannot be upheld under Congress' spending power.

Section 16913 is not a valid exercise of any of the congressional powers enumerated in the Constitution. As a consequence, Section 16913 is unconstitutional.[7] To obtain a conviction under § 2250(a), the government must first prove Waybright was required to register under § 16913. Because § 16913 is unconstitutional, the government cannot satisfy its burden of proof

with respect to § 2250(a). Accordingly, the Indictment must be dismissed.[8]

## C. Tenth Amendment

Waybright argues that SORNA's registration requirements violate the Tenth Amendment to the U.S. Constitution. The Tenth Amendment provides, "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. The Tenth Amendment prevents the federal government from commandeering state officials into enacting or administering federal laws. *Printz v. United States*, 521 U.S. 898, 935, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997).

SORNA offers financial incentives to states to encourage them to implement SORNA-compliant sex offender registries. 42 U.S.C. §§ 16924, 16925(d). Waybright acknowledges this method of federal regu-

---

**7.** In declaring § 16913 unconstitutional, the Court expresses no opinion about the wisdom or necessity of creating comprehensive, national standards for the registration of sex offenders. Nor does the Court mean to suggest Congress could not have achieved the purposes of SORNA in a manner consistent with its enumerated powers. To the contrary, the Court acknowledges § 16913 could be made constitutional by limiting the registration requirement to sex offenders who travel in interstate commerce or by amending § 16913 to encourage the states to enact laws requiring all sex offenders to register.

**8.** At oral argument, the Court expressed concern that Waybright may lack standing to challenge § 16913 facially. The Court suggested, because Waybright had traveled in interstate commerce, § 16913 was not unconstitutional as applied to him. Upon further reflection, I do not think this approach is appropriate. The Supreme Court recently observed facial challenges where "the most [a defendant] could say was that the statute could not be enforced against him, because it could not be enforced against someone else whose behavior would be outside the scope of Congress's Article I authority to legislate" are

discouraged. *Sabri v. United States*, 541 U.S. 600, 609, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004). The Court nevertheless recognized exceptions to its general reticence. *Id.* at 609–10, 124 S.Ct. 1941. Although the enumerated exceptions did not include challenges to Congress' power under the Commerce Clause to enact statutes that are not economic in nature and do not contain a jurisdictional hook, it appears the Court has in fact carved out an exception in these types of cases. *See id.* at 610, 124 S.Ct. 1941 (Kennedy, J., concurring). In *United States v. Lopez*, 514 U.S. 549, 551–68, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), for example, the Court struck down a statute that criminalized possession of a firearm in a school zone without examining whether the firearm at issue was composed of parts manufactured in different states or had previously traveled in interstate commerce. Although both of these propositions were likely true of the firearm possessed in *Lopez*, the Court never suggested the defendant lacked standing to challenge the statute because of the firearms' actual connection with interstate commerce. *See id.*

lation does not run afoul of the Tenth Amendment. *See Dole,* 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (discussing Congress' spending power). To date, however, no State has implemented SORNA. Because SORNA currently requires sex offenders to register, but no state has implemented the Act, Waybright maintains the federal government is in effect forcing state officials who run state registries to accept federally—mandated sex offender registrations before their state chooses to adopt SORNA voluntarily.

█ Waybright does not have standing to assert this claim. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (requiring a causal connection between the injury and the conduct complained of to assert standing). Under Montana law, a person must register as a sex offender if he has been convicted of a crime in another state that requires registration. Mont.Code Ann. §§ 46–23–502(9)–(10), 46–23–504(c). Because Waybright was required to register as a sex offender under West Virginia law, he was also required to register as a sex offender under Montana law upon moving to Montana. Because Montana law required Waybright to register, SORNA did not require state officials who run the Montana sex offender registry to do anything they were not already required to do under Montana law in this case. Waybright therefore has not suffered any injury as a result of Congress' alleged commandeering of state officials.

**D. Right to Travel**

Waybright claims § 2250(a) violates the constitutional right to travel. He argues that sex offenders who remain in a single state are subject only to state registration requirements and state criminal penalties because, to date, no state has implemented SORNA. These persons are contrasted with sex offenders who travel from one state to another, noting those who travel are subject to more onerous registration requirements and federal prosecution. According to Waybright, these additional burdens on sex offenders who travel from one state to another infringe the right to travel.

█ The right to travel is a fundamental right protected by the U.S. Constitution. *Shapiro v. Thompson,* 394 U.S. 618, 629–30, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). It is derived from the Privileges and Immunities Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment. *Id.* at 631, 89 S.Ct. 1322. The right to travel protects a person's right to enter and leave another state, the right to be treated fairly when temporarily present in another state, and the right to be treated the same as other citizens of a state when moving there permanently. *Saenz v. Roe,* 526 U.S. 489, 500, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999). A statute that unreasonably burdens the right to travel is subject to strict scrutiny and thus must be justified by a compelling government interest. *Id.* at 499, 119 S.Ct. 1518; *Shapiro,* 394 U.S. at 627, 634, 89 S.Ct. 1322.

The Eleventh Circuit recently addressed whether Florida's sex offender registration statute infringes the right to travel. *Doe v. Moore,* 410 F.3d 1337 (11th Cir.2005). Like SORNA, Florida's sex offender registration statute requires sex offenders to register with local law enforcement soon after they relocate to a permanent or temporary residence in Florida. *Id.* at 1340. Sex offenders planning to move from Florida to another state must notify law enforcement of their intended address before they leave. *Id.* at 1341. In upholding the statute, the court in *Doe* noted sex offenders are not treated differently because of their status as new or temporary residents of Florida; they are treated differently

because they are sex offenders. *Id.* at 1348–49. Furthermore, the statute does not prevent sex offenders from entering or leaving the state; it merely requires them to notify law enforcement before they do so. *Id.* In light of the statute's goal of protecting the public from sex offenders, the court concluded the burdens imposed on sex offenders' right to travel by the statute were not unreasonable. *Id.*

 Like the Florida statute analyzed in *Doe*, § 2250(a) does not unreasonably burden the right to travel. It does not prevent sex offenders from traveling or relocating to other states; it merely requires them to notify law enforcement when they do. Section 2250(a) also does not require states to treat sex offenders who relocate differently than sex offenders already present in a state. Rather, under SORNA, all sex offenders, whether new or long-time residents, must register.

Waybright contends § 2250(a) infringes the right to travel because it subjects sex offenders who travel to another state and fail to register to harsher penalties than sex offenders who remain in one state. This argument fails because the Supreme Court has upheld the validity of such a practice. In *Jones v. Helms*, 452 U.S. 412, 422–23, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981), the Court addressed the constitutionality of a Georgia statute that enhanced the misdemeanor of child abandonment to a felony if a resident offender left the state after committing the offense. In concluding the statute did not infringe the right to travel, the Court said "although a simple penalty for leaving a State is plainly

impermissible, if departure aggravates the consequences of conduct that is otherwise punishable, the State may treat the entire sequence of events, from the initial offense to departure from the State, as more serious than its separate components." *Id.* at 422, 101 S.Ct. 2434.

Here, Waybright was subject to state criminal penalties for failure to register as a sex offender in West Virginia. *See* W. Va.Code § 15–12–8. By moving to Montana and failing to register, he became subject to SORNA's enhanced federal penalty. *See* 18 U.S.C. § 2250(a). Under the reasoning of *Jones*, however, this harsher penalty is permissible because a sex offender's relocation to another state aggravates the consequences of his failure to register. In particular, relocation makes sex offenders more difficult to track.[9] Because § 2250(a) does not unreasonably burden the right to travel and the statute's enhanced penalties are warranted, Waybright's right to travel argument fails.

### E. Non–Delegation Doctrine

 Waybright maintains § 16913(d) violates the non-delegation doctrine because it grants the Attorney General authority to determine SORNA's retroactive effect. Under the non-delegation doctrine, Congress "is not permitted to abdicate or transfer to others the legislative functions with which it is [constitutionally] vested." *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 421, 55 S.Ct. 241, 79 L.Ed. 446 (1935). The non-delegation doctrine does not keep Congress from obtaining the assistance of

---

**9.** Waybright cites *Cavins v. Lockyer*, 232 Fed. Appx. 655 (9th Cir.2007), in support of his assertion that SORNA violates the right to travel. In *Cavins*, the Ninth Circuit reversed a district court's dismissal on mootness grounds of a habeas petition. *Id.* at *1. The Ninth Circuit determined the petition was not moot because the collateral consequences of revocation of the defendant's outpatient status

could subject him to more onerous notification rules and greater penalties in other states thereby implicating his right to travel. *Id.* at **1–**2. *Cavins* is not persuasive here because the court did not find a violation of the right to travel; it merely remanded the case for the district court to consider the issue in the first instance.

its coordinate branches; it merely requires Congress to provide clear guidance and delineate the boundaries of delegated authority. *Mistretta v. United States*, 488 U.S. 361, 372–73, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

According to Waybright, § 16913(d) authorizes the Attorney General to determine whether SORNA is applicable to sex offenders convicted before the Act's enactment. Section 16913(d) provides:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

When read in isolation, this provision does appear to grant the Attorney General authority to determine SORNA's retroactivity. As this Court recently held in *United States v. Dayman*, CR 07–27–H–DWM (Jan. 14, 2008), however, when § 16913 is read as a whole, it is clear the statute only authorizes the Attorney General to promulgate regulations in a limited number of circumstances. *See Ariz. Health Care Cost Containment Sys. v. McClellan*, 508 F.3d 1243, 1250 (9th Cir.2007).

In § 16913(a) Congress made SORNA retroactive by requiring sex offenders to register without regard to the date of their conviction. *See* 42 U.S.C. § 16913(a) ("A sex offender shall register . . . ."); *id.* § 16911(1) (defining "sex offender" as "an individual who was convicted of a sex offense"). In § 16913(d), Congress only delegated authority to the Attorney General to promulgate regulations for the registration of persons classified as sex offenders under SORNA who were not previously required to register under the laws of their state. *See United States v. Hinen,*

487 F.Supp.2d 747, 751 (W.D.Va.2007). Such situations are likely to arise because the definition of "sex offense" under SORNA is broader than under most states' current registration laws. *See id.* at 751–52. As a result, an offender who was convicted of, and sentenced to probation for, a sex offense within the categories for which SORNA requires registration prior to the enactment of SORNA, but who did not register near the time of his sentencing because the offense was not subject to a registration requirement under federal law or applicable state law at the time would not be able to register within the normal three-business-days-after-sentencing time period specified in SORNA as that time period would have already passed. 72 Fed.Reg. 8894, 8896 (Feb. 28, 2006). This reading of the limited authority delegated in § 16913(d) is supported by the heading of that section: "Initial registration of sex offenders unable to comply with subsection (b) of this section." *See Almendarez–Torres v. United States*, 523 U.S. 224, 234, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). It is also supported by the purpose of the Act. SORNA was conceived as a comprehensive national sex offender registry. 42 U.S.C. § 16901. To construe § 16913(a) so as to preclude within its scope all sex offenders convicted before July 26, 2006 would defeat the express purpose of the Act.

Because Congress' enactment of § 16913(a) made SORNA's registration requirements retroactive and § 16913(d) only grants the Attorney General authority to promulgate regulations in limited circumstances, SORNA does not violate the non-delegation doctrine.

**F. Administrative Procedure Act**

Waybright argues the regulations promulgated by the Attorney General pursuant to § 16913(d) are invalid under the

Administrative Procedure Act ("APA") because they were issued without notice and comment. The APA requires an agency to give public notice of a proposed regulation at least thirty days before its effective date and solicit comment from the public. 5 U.S.C. § 553(b)-(c). The provision of notice and comment is not required if the agency finds the procedure is impracticable, unnecessary, or contrary to the public interest. *Id.* § 553(b)(3)(B). The Attorney General made such a finding in this case, 72 Fed.Reg. at 8896–8897, and Waybright challenges that finding.

 Waybright lacks standing to pursue this claim. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130. As discussed above, § 16913(d) only authorizes the Attorney General to promulgate regulations relating to persons who were unable to initially register under SORNA because their crime of conviction did not require registration under federal or state law at the time of conviction. Waybright does not fall into this narrow class of persons. Waybright was required to register as a sex offender under West Virginia law after his conviction for sexual abuse in the second degree. *See* Sentencing Order; W. Va.Code § 15–12–2. Thus, Waybright was required to register pursuant to § 16913(a), not as a result of the regulations promulgated pursuant to § 16913(d). Because SORNA's requirements applied to Waybright without any action by the Attorney General, Waybright's injury is not traceable to the alleged APA violation.

### G. Montana's Failure to Implement SORNA

Waybright contends he cannot be convicted of failing to register after moving to Montana because Montana has not implemented SORNA and the Attorney General has not issued regulations making SORNA applicable to persons convicted before the Act's implementation in a particular juris-

diction. He reads § 16913(d) as granting the Attorney General authority to determine whether SORNA's requirements apply to persons convicted before a state implements SORNA. Waybright notes, although the Attorney General promulgated regulations making SORNA applicable to persons convicted before the Act's enactment, the Attorney General has not yet specified whether the Act applies before its implementation in a particular jurisdiction. Because there is no authority making SORNA's registration requirements applicable in states that have yet to comply with the Act, Waybright concludes SORNA is not applicable to him. He further claims he cannot be convicted for failing to register in accordance with SORNA because it was impossible for him to do so in light of Montana's failure to implement the Act. *See United States v. Dalton,* 960 F.2d 121, 124 (10th Cir.1992) (concluding it is a violation of fundamental fairness to hold someone liable for a crime when an essential element of the crime is his failure to perform an act that he is incapable of performing).

 The argument is without merit. For the same reasons § 16913(d) does not authorize the Attorney General to determine whether SORNA applies to persons convicted before the Act's enactment, *see supra* Section III.E, the subsection also does not authorize the Attorney General to determine whether SORNA applies to persons convicted before the Act's implementation in a particular jurisdiction. Section 16913(a) makes SORNA's registration requirements applicable to all sex offenders regardless of whether the Act has been implemented in a particular jurisdiction. It states, "[a] sex offender shall register, and keep registration current, in each jurisdiction where the offender resides where the offender is employed, and where the offender is a student." 42 U.S.C.

§ 16913(a). It does not limit its applicability to persons convicted in or residing in jurisdictions that have implemented SORNA. Thus, no action on the part of the Attorney General was required to make SORNA applicable to Waybright. Because the plain language of the Act makes it applicable to Waybright, he was required to register even though Montana has not implemented SORNA.

Furthermore, Montana's failure to implement SORNA did not make registration impossible for Waybright. As the court in *United States v. Utesch,* 2008 WL 656066, *8 (E.D.Tenn. Mar.6, 2008), explained:

> To be sure, the registration requirements in [most states] do not meet all of SORNA's requirements. But defendant is not being prosecuted for providing less information than SORNA requires; he is being prosecuted for failing to register at all. The fact that the states have not yet met their obligations under SORNA (they have at least until July 27, 2009, to do so), is of no consequence in determining whether it was possible for the Defendant to meet his own obligations under the act. It was clearly possible for the Defendant to comply with SORNA, and as such, there is no due process violation.

In this case, Waybright is not being prosecuted for providing less information to the State of Montana than SORNA requires. He is being prosecuted for failing to register at all after moving to Montana. While Waybright asserts Montana has not implemented SORNA, he does not provide any evidence that it was impossible for him to register as a sex offender in Montana. Such registration was possible because Montana maintained a sex offender registry both before and after SORNA's enactment. *See* Mont.Code Ann. § 46–23–501, *et seq.* Waybright's claim therefore fails.

## H. Due Process

Next Waybright maintains he had no duty to register under SORNA because the government failed to notify him of his obligations under the Act. Waybright notes § 2250(a) requires a defendant to "knowingly" fail to register and 42 U.S.C. § 16917 imposes an affirmative duty on the government to inform sex offenders of their duty to register under SORNA. According to Waybright, prosecuting him for failure to register in the absence of notification required under the Act violates his right to due process of law. Waybright relies on *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).

In *Lambert,* the Supreme Court struck down a Los Angeles city ordinance that required persons convicted of a felony to register if they remained in the City for more than five days. 355 U.S. at 226, 229–30, 78 S.Ct. 240. The Court recognized an exception to the general principle that ignorance of the law is no excuse. *Id.* at 228, 78 S.Ct. 240. Specifically, the Court determined a conviction based on wholly passive conduct where the defendant is unaware of any wrongdoing violates due process. *Id.* The Court also noted the lack of circumstances in *Lambert* which might have moved the defendant to inquire as to the necessity of registration. *Id.* at 229, 78 S.Ct. 240.

■■■ *Lambert* is distinguishable from this case. Even if Waybright was unaware of his registration obligations under SORNA, he knew of his obligation to keep his registration current and notify law enforcement of any change of residence under West Virginia law. Waybright signed a "Notification of Sex Offender Responsibility" form on two separate occasions. By signing these forms, he demonstrated that he understood his obligation to report any change of address to law enforcement authorities in West Virginia and to register

and comply with the registration laws of any state to which he moved. The "Notification of Sex Offender Responsibility" forms also informed Waybright he could be charged with a state offense if he failed to register. Thus, unlike the defendant in *Lambert*, Waybright cannot claim he was unaware of any wrongdoing.

Laws requiring sex offenders to register are numerous and long-standing. SORNA is not the first federal statute to regulate sex offenders who fail to comply with state registration requirements. *See* Jacob Wetterling Act of 1994, 42 U.S.C. § 14071. As the court in *Hinen* aptly noted:

> individuals convicted of certain conduct are placed on constructive notice that they may be subjected to future regulations because of the nature of their criminal conviction. In this instance, the defendant was convicted of committing a sex crime.... By committing this crime, the defendant removed himself from the class of ordinary citizens to the point that cannot reasonably expect to be free from regulation as a sex offender, especially when relocating to another jurisdiction.

487 F.Supp.2d at 754. Waybright knew of his obligation to register as a sex offender under state law. His prosecution here, without notification of SORNA's specific requirements and penalties, does not violate due process.

## IV. Conclusion

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant Waybright's Motion to Dismiss Based Upon APA, Tenth Amendment, and Right to Travel Violations (dkt # 13) is DENIED.

IT IS FURTHER ORDERED that Defendant Waybright's Motion to Dismiss Based Upon Montana's Failure to Implement SORNA, Due Process Violation, and Violation of the Non–Delegation Doctrine (dkt # 15) is DENIED.

IT IS FURTHER ORDERED that Defendant Waybright's Motion to Dismiss Based Upon Commerce Clause Violations (dkt # 11) is GRANTED IN PART and DENIED IN PART. The motion is DENIED with respect to 18 U.S.C. § 2250(a) because Congress did not exceed its power under the Commerce Clause in enacting this provision. The motion is GRANTED with respect to 42 U.S.C. § 16913. Congress exceeded is power in enacting 42 U.S.C. § 16913, and thus, the provision is unconstitutional.

IT IS FURTHER ORDERED that the Indictment against Defendant Waybright is DISMISSED WITHOUT PREJUDICE.